**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                                                                                             No. CR 98-231 BB

MARIA ROSARIO FUENTEZ,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING NEW TRIAL**

THIS MATTER is before the Court on the Defendant's motion for a new trial, and having presided over the trial and having considered the briefs of counsel, the Court FINDS the motion is not well taken and it will be DENIED.

**I.**     **Even if it was otherwise admissible, Rule of Evidence 403 was properly invoked to exclude impeachment of Agent Sedillo with "other bad acts"**

One of the Government's main witnesses was New Mexico State Police Officer Jerome Sedillo. Sedillo testified that while acting undercover he bought one ounce of cocaine in March 1997 and one kilogram of cocaine in February 1998 from the Defendant. The Government played a tape recording of the March 1997 transaction as well as tape recordings of several telephone calls that preceeded the February 1998

transaction. Sedillo testified to the circumstances surrounding each of the transactions. Although he admitted contacting her several times, he denied pressuring Defendant to sell him cocaine. The Defendant relied on an entrapment defense and testified she had been pressured by Sedillo and his informant, Jerry Olguin.

During cross-examination, the defense attempted to cross-examine Sedillo on a Department inquiry and disciplinary action against him which occurred after the transactions in this case. It was the Defendant's position Sedillo had set up an undercover narcotics transaction without proper overtime authorization and without prior surveillance approval. Defendant further argued Sedillo had tried to coverup his lack of appropriate authorization. It was Sedillo's position that he was approached by narcotics traffickers and there was not sufficient opportunity for prior Department approvals. The disciplinary action against Sedillo was on appeal at the time of Defendant's trial. There was also controversy as to what Sedillo had reported to defense counsel about this incident.

Defendant argues that I erred in disallowing any cross-examination of Sedillo with regard to the disciplinary action then on departmental appeal. According to Defendant, the evidence was admissible under Fed. R. Evid. 608(b) and 404(b) to show bias. Defendant claims that "Agent Sedillo violated strict state police department regulations concerning the conduct of undercover operations. Then Agent Sedillo lied

2

to his superiors concerning the violation of those regulations when an internal affairs investigation was initiated." (Deft's Br. at 5.)

In essence, then, Defendant's position is that the administrative proceedings determined Sedillo had a propensity to lie about his role in narcotics transactions. It is not at all clear either Rule 608 or Rule 404(b) would sanction such evidence. *See United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993), *cert. denied*, 510 U.S. 1119 (1994); *United States v. Hill*, 505 F. Supp. 983 (E.D. Pa. 1982), *aff'd*, 716 F.2d 893 (3d Cir. 1983), *cert. denied*, 464 U.S. 1039 (1984). However, I excluded the evidence of Sedillo's disciplinary proceedings pursuant to Fed. R. Evid. 403. I believe now, as I did at trial, that this evidence would detract from the proper focus of the charges against Defendant by requiring the jury to hear evidence of Sedillo's involvement in other undercover transactions and the subsequent administrative reviews of such transactions. More importantly, this jury would be involved in a "trial within a trial" and be required to resolve the merits of the charges against Sedillo in order to validly reach any conclusions as to his propensity to lie. This is exactly the type of situation Rule 403 is designed to address. *Donald v. Rast*, 927 F.2d 379 (8th Cir.), *cert. denied*, 502 U.S. 827 (1991); *Berkovich v. Hicks*, 922 F.2d 1018 (2d Cir. 1991); *cf. Hewitt v. City of Truth or Consequences*, 758 F.2d 1375 (10th Cir.1985) (even if subsequent

statements of police officer charged with excessive force were relevant, they were more prejudicial than probative).

In *United States v. Hamell*, 3 F.3d 1187 (8th Cir. 1993), *cert. denied*, 510 U.S. 1138 (1994), the defendants were charged with being felons in possession of firearms after a police officer saw them throw handguns out of their truck as he was attempting to stop them for running a red light. *Id.* at 1188. The district court did not allow the defense to cross-examine the police officer "about the officer's later dismissal from the police department for using illegal drugs and for submitting false statements about his drug use to police investigators." *Id.* at 1189. On appeal, the Eighth Circuit said:

> Because the officer's dismissal two years after the defendants' arrest was unrelated to the events involved in the defendants' trial and the handguns found by the roadside corroborate the officer's testimony, the district court concluded evidence of the officer's dismissal was only marginally relevant and would merely confuse the issues and needlessly prolong the trial. We conclude the district court did not abuse its discretion by disallowing cross-examination on the reasons for the officer's dismissal.

*Id.*

## II. The testimony of Eloy Juarez was properly stricken after he invoked his Fifth Amendment privilege

During her case-in-chief, the Defendant called Eloy Juarez. Prior to his testimony, I briefly informed Juarez of his Fifth and Sixth Amendment protections.

4

Juarez testified that he was an acquaintance of Olguin. He testified that in March of 1997, Olguin provided him with an ounce of cocaine which Juarez was to hold for Olguin. The Government then asked me to repeat the declaration of rights given to Juarez concerning his right against self-incrimination and his right to counsel. I clarified that counsel would be provided if he could not afford them. Juarez then invoked his right to counsel. During a recess, he met with a court appointed lawyer. Upon resumption of trial, Juarez invoked his Fifth Amendment privilege to all questions concerning his activity with regard to the ounce of cocaine though he answered questions as to other matters, such as denying the Defendant had been a "source" of cocaine to him.

Defense counsel made a proffer of Juarez's testimony. Had Juarez been allowed to continue his testimony, he would have testified that he delivered the ounce of cocaine to the Defendant. Defendant thus proffered that the ounce that Defendant sold on March 19, 1997, to Sedillo was in fact the same ounce that was introduced into the transaction by the sometime confidential informant, Jerry Olguin. It was Defendant's position is that these facts constituted a circular transaction and therefore entrapment as a matter of law.

Initially, it must be noted Defendant advanced no legal authority to support her position that the testimony of Juarez would have been sufficient to support a jury

instruction on entrapment. It is undisputed Defendant received the ounce of cocaine from Juarez, her friend and former employee. It is also undisputed Juarez had no involvement with the Government. Rather, it is the Defendant's position that Juarez would have testified he got the cocaine from Olguin who was a confidential informant for the Government.

Even if Juarez so testified, an entrapment instruction would not have been required since Defendant only sold drugs to, and did not buy from, a Government informant. *See Hampton v. United States*, 425 U.S. 484 (1976). If the purpose of the entrapment defense is to deter Government agents from engaging in conduct which shocks the conscience,[1] then there is nothing shocking in Olguin transferring the cocaine to Juarez, over whom the Government had no control, and for Juarez to then transfer the cocaine to Defendant. *Id.*; *see also United States v. Russell*, 411 U.S. 423 (1973). At best, then, this was not a full circle transaction but broken by the free will of two non-Government agents, Juarez and the Defendant.[2] The type of "broken circle" transaction where an unaffiliated third party breaks the chain has uniformly been held

---

[1] *Hampton v. United States*, 425 U.S. at 490 (Rehnquist, J.).

[2] It is debateable the federal courts would recognize a full circle entrapment defense. *United States v. Graves*, 556 F.2d 1319, 1323 (5th Cir. 1977), *cert. denied*, 435 U.S. 923 (1978).

to be insufficient to sustain an entrapment defense. *United States v. Rodriguez*, 474 F.2d 587 (5th Cir. 1973); *State v. Peters*, 435 N.W.2d 675 (Neb. 1989); *State v. Stinson*, 703 P.2d 1238 (Ariz. 1985); *Elmore v. State*, 382 N.E.2d 893 (Ind. 1978).

Assuming Juarez's testimony could have provided the basis of an entrapment defense, however, it was fatally flawed. Once Juarez was fully informed of the implications of testifying he gave the ounce to the Defendant, he asserted his Fifth Amendment rights and refused to respond to the Government's questions on cross-examination. In retrospect, I should have stricken his testimony immediately, but I did not understand the Government to be moving to strike the testimony at that time. The question from the jury during deliberations, however, brought the question sharply into focus.

"Where a witness aserts a valid privilege against self-incrimination on cross-examination, all or part of that witness's testimony must be stricken if invocation of the privilege blocks inquiry into matters which are 'direct' and are not merely 'collateral.'" *United States v. Seifert*, 648 F.2d 557, 561 (9th Cir. 1980). Thus, a trial court may legitimately strike the partial testimony of a defense witness who invokes the Fifth Amendment privilege to preclude cross-examination by the Government. *United States v. Bartelho*, 129 F.3d 663, 673 (1st Cir. 1997), *cert. denied*, ___ U.S. ___ (1998); *United*

7

*States v. Brooks*, 82 F.3d 50, 54 (2ᵈ Cir.), *cert. denied*, ___ U.S. ___ (1996); *United States v. Boyett*, 923 F.2d 378, 379 (5ᵗʰ Cir.), *cert. denied*, 502 U.S. 809 (1991).

The Court of Appeals for the Fourth Circuit considered the proper remedy in an analogous factual context in *Lawson v. Murray*, 837 F.2d 653 (4ᵗʰ Cir.), *cert. denied*, 488 U.S. 831 (1988). In the state court trial, the defense called Larry Bellamy who testified that he was not with the defendant between ten and midnight the night of the burglary. On cross-examination Bellamy admitted he had been with the defendant earlier and that the defendant had dropped him off in a red Mercury in the vicinity of the warehouse which had been robbed.³ Bellamy further admitted the police had picked him up in the vicinity of the warehouse but invoked the Fifth Amendment as to the time and whether he was fleeing. After concluding Bellamy had not waived the privilege, the trial judge granted the prosecution's motion to strike Bellamy's testimony.

In holding that the federal district court had erred in granting a writ of habeas corpus based upon an infringement of the defendant's Sixth Amendment rights, the Fourth Circuit pointed out both sides in a trial have essential rights which must be appropriately balanced by the trial judge:

---

³ The police testified they had seen two black males near a red Mercury with an open trunk in the parking lot of the warehouse.

> The defendant's right to present witnesses in his own defense, however, does not carry with it the right to immunize the witness from reasonable and appropriate cross-examination. Neither a defendant's right of confrontation nor his right to present witnesses in his own defense is so absolute as to require a submersion of even more fundamental principles that animate our adversary system. "[A]rriving at the truth is a fundamental goal of our legal system," *United States v. Havens*, 446 U.S. 620, 626 (1980), and cross-examination is an indispensable tool in the search for truth. *See Davis v. Alaska*, 415 U.S. 308, 316 (1974); *United States v. Caudle*, 606 F.2d 451, 457 (4th Cir. 1979). The fifth amendment provides no immunity from cross-examination for a witness who elects to testify; it is not a "positive invitation to mutilate the truth a party offers to tell." *Brown v. United States*, 356 U.S. 148, 156 (1958).

837 F.2d at 655-56.

The Fourth Circuit then considered when striking the testimony of a criminal defendant's witness was the proper method to balance the scales. Speaking for the Court, Senior Judge Haynsworth said:

> Any action by the court may be inappropriate when a witness invokes the fifth amendment privilege to avoid cross-examination on purely collateral matters. Even when the witness refuses to answer questions relevant to matters at issue, striking only portions of the testimony may be the more reasonable remedy if that can avoid the unfairness created by the avoidance of full cross-examination, but the purpose of cross-examination is to test the credibility of the witness and the truthfulness of his earlier testimony. Striking all of the testimony of the witness may be the only

9

> appropriate remedy when refusal to answer the questions of the cross-examination frustrates the purpose of the process.

837 F.2d at 656.

Finally, the Court of Appeals affirmed striking all of Bellamy's testimony:

> The principle was properly applied by the trial judge. Bellamy was clearly attempting to say just enough to exonerate Clarence Lawson without implicating himself. In the process, he was trifling with the truth, as the prosecutor well knew, because Bellamy had been caught in the act of fleeing from the scene in the presence of the red Mercury automobile. The prosecutor was entitled to closely examine the witness in that area and thus to expose to the fact finder Bellamy's falsification. Bellamy's refusal to answer questions so relevant and pertinent left the trial judge with no alternative but to strike Bellamy's entire testimony.

*Id.*

While it could have been handled better if I had been notified of the scope of Juarez's testimony in advance and could have therefore better anticipated the potential for invocation of his Sixth and Fifth Amendment rights, the jury would clearly have been given a false impression if his testimony had not been stricken. *See* 28 WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6167 (1993) (purpose of striking testimony is to prevent jury from receiving misleading partial picture). The testimony Juarez gave before consulting an attorney (that he was the source of the

Defendant's ounce of cocaine) was the very subject on which he later properly invoked his Fifth Amendment rights. It is therefore hardly a collateral matter.

Defendant argues that the timing of my instruction to the jury was the problem. The fact the jury sent out a note indicating they were considering the uncounselled testimony of Juarez that he was the source of the ounce of cocaine was, of course, the very reason it was necessary to strike the testimony. Nor am I persuaded Defendant would, or could, have put on different, and legally significant, evidence if the evidence had been stricken prior to the close of evidence. The Defendant subpoenaed Olguin who, despite assurances, apparently failed to appear. Moreover, since Defendant took the witness stand, she was obviously free to testify as to any knowledge she had on the source of the cocaine.[4] It seems doubtful Defendant's husband, if he had been allowed to testify, in direct contravention of Rule 615, would have had different information. Most significantly, however, it really doesn't matter if Juarez got the ounce from Olguin. As the Court earlier noted, even if Juarez got the ounce from Olguin who was a sometime informant for Sedillo, Defendant can provide no federal authority that this should invoke the entrapment doctrine.[5]

---

[4] Defendant identified her nephew as the source of the kilogram she later sold Sedillo.

[5] The Government did provide evidence which would support a finding the Defendant was predisposed and lacked inducement since Sedillo testified he had

# **O R D E R**

For the above stated reasons, Defendant's motion for a new trial is **DENIED**.

Dated at Albuquerque this 7th day of October, 1998.

                                              **BRUCE D. BLACK**
                                              United States District Judge

Counsel for Plaintiff:
       James R.W. Braun, Assistant U.S. Attorney, Las Cruces, NM

Counsel for Defendant:
       Michael L. Stout, Stout & Winterbottom, Roswell, NM

---

never even heard of the Defendant until Juarez identified her as his source. Sedillo further testified at length as to the attitude and knowledge Defendant demonstrated at both sales.